1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3

4     REALTIME DATA, LLC,                )
                          Plaintiff,     )
5                                        )
                                         )
6     vs.                                )  CA No. 17-11279-IT
                                         )
7                                        )
      ACRONIS, INC., LTD,                )
8                          Defendant.    )

9

10    BEFORE:  THE HONORABLE JUDGE INDIRA TALWANI

11

12                    SCHEDULING CONFERENCE

13

14

15           John Joseph Moakley United States Courthouse
                         Courtroom No. 9
16                      One Courthouse Way
                        Boston, MA 02210
17             Wednesday, September 20, 2017
                          2:42 p.m.

18

19

20
                     Cheryl Dahlstrom, RMR, CRR
21                     Official Court Reporter
             John Joseph Moakley United States Courthouse
22               One Courthouse Way, Room 3510
                        Boston, MA 02210
23            Mechanical Steno - Transcript by Computer

24

25

1    APPEARANCES:

2    ON BEHALF OF THE PLAINTIFF:

3        BIRNBAUM & GODKIN, LLP
         By:  David S. Godkin, Esq.
4        280 Summer Street
         Boston, Massachusetts 02210
5
         RUSS AUGUST & KABAT
6        By:  C. Jay Chung, Esq.
         12424 Wilshire Boulevard
7        Los Angeles, California 90025

8
     ON BEHALF OF THE DEFENDANT:
9
         PEABODY & ARNOLD, LLP
10       By:  Elizabeth A. Houlding, Esq.
         600 Atlantic Avenue
11       Boston, Massachusetts 02210-2261

12       ARENT FOX, LLP
         By:  Janine A. Carlan, Esq.
13       1717 K Street N.W.
         Washington, D.C. 20006

14

15

16

17

18

19

20

21

22

23

24

25

1             P R O C E E D I N G S

2        THE CLERK:  This is Case No. 17CV11279.  Will counsel

3    please identify themselves for the record.

4        MR. CHUNG:  Jay Chung for plaintiff, your Honor.

5        MR. GODKIN:  David Godkin, local counsel for the

6    plaintiff, your Honor.

7        THE COURT:  Good afternoon.

8        MS. CARLAN:  Janine Carlan, with Arent Fox, for

9    defendant, Acronis.

02:42 10        THE COURT:  Good afternoon.

11        MS. HOULDING:  Good afternoon, your Honor.  Elizabeth

12    Houlding.  I'm here from Peabody and Arnold as local counsel

13    for the defendant.

14        THE COURT:  Good afternoon.

15        So it looks like we have a couple of different moving

16    parts on this patent case.  Am I correct that this involves a

17    number of different patents in this case?

18        MS. CARLAN:  Yes, your Honor.  There are four patents

19    involved here.

02:42 20        THE COURT:  And the pending partial motion to dismiss

21    involves one of those patents?

22        MS. CARLAN:  Yes, your Honor.  It involves the '204

23    patent only.

24        THE COURT:  And are these -- you've suggested that you

25    should wait to respond overall -- and I think plaintiffs agreed

1   with you.  I was really the only problem in the room -- but to

2   respond overall until I address the first motion to dismiss.

3   But is there any reason not to proceed on those other three

4   while I am making my way through the motion as to the one?

5          MS. CARLAN:  We could answer on October 4th, your

6   Honor, just as you have ordered.  The reason we thought it

7   would make sense to wait is just because we could put all of

8   the answer together if the '204 is not dismissed.

9          THE COURT:  So here's my -- I don't want to make the

02:43 10   parties do unnecessary work, and the fact that you were all

11   amenable to this gave me some pause.  But I do understand, in

12   general, that the patent bar is concerned with the speed that

13   cases are moving in the District of Massachusetts, and I know

14   that my session has not been particularly speedy.  So I don't

15   want to have there be delay where it is -- to no purpose.

16          So if we can get things moving as to the other

17   patents, I would encourage that.  And I don't see a reason not

18   to go ahead and answer -- it's just a question of at one point

19   or another you're going to have to do it.  The allegations

02:44 20   relating to the patent that is the subject of the motion to

21   dismiss, I would think there would be no problem with answering

22   those at this time with a -- this is under -- related to the

23   motion to dismiss and leave it at that.

24          Do you have any disagreement with proceeding in that

25   way?

1          MR. CHUNG:  We don't have any disagreements, your

2     Honor.

3          THE COURT:  In the event that I allowed the partial

4     motion to dismiss, that would take care of those claims.  In

5     the event that I denied it, you would be able to file an

6     amended answer to fill in those answers.

7          MS. CARLAN:  Understood, your Honor.  One of the

8     things just also that we put in our joint statement is that we

9     will eventually -- we would like to move to stay the case, so

02:45 10    when we speak of the schedule and we speak of delay, that is

11    something forefront in Acronis' mind, is that this should be

12    stayed while all of these IPRs are pending in front of the

13    Patent Office, which could invalidate every single one of these

14    patents.

15          THE COURT:  I assume that's --

16          MR. CHUNG:  Currently, we oppose that -- any motion.

17    There's no motion pending currently.

18          A couple things that I'd like to mention is that

19    Acronis is not a petitioner in any of the IPR or Patent Office

02:45 20    proceedings.  Those are filed by other parties not related to

21    this -- parties at issue in this case.

22          Another point I'd like to raise is that while the

23    patents -- the IPR has not been instituted.  Petition has been

24    filed but it hasn't been instituted.

25          THE COURT:  I'm sorry.  Was some -- and we can get to

1    this much more once a motion is filed.  But are some of the --

2    have some proceedings been instituted or only filed?

3          MS. CARLAN:  Yes, your Honor.  Many have been

4    instituted.  In fact, for all three -- for three of the patents

5    they have all had institutions, multiple institutions.  We're

6    talking about two on some, three on others.

7          Only the '204, which is a relatively new patent that's

8    been asserted by Realtime Data.  Realtime Data has asserted

9    this patent against at least 14 other defendants in Texas.  I

02:46 10   think there's Delaware and California as well.  And these --

11   most of them -- all three of the four have had institutions.

12   The newest one, '204, has not only because it's newer in the

13   action.  The IPR and CBM that have been filed will be -- will

14   have a decision as to institution by the end of this year.  But

15   then, again, we also are talking about the '204 may not be a

16   part of our case if it's dismissed.

17         MR. CHUNG:  I'd like to make one comment, is that it

18   is true that there are IPRs -- instituted IPRs that are pending

19   as to three of the four patents but they're not -- the IPRs are

02:47 20   specific to certain claims.  And in this case, we haven't had

21   infringement contentions, so we haven't finalized which claims

22   are going to be asserted.  So in that way, there could be

23   instances where claims asserted against Acronis may not be

24   under an IPR, any IPR, even if other claims for that same

25   patent might be in IPR.

1    THE COURT:  Let's do this:  Let's -- you're obviously

2    free to file your -- a motion to stay if you think it's

3    appropriate.  I'm a real stickler about the Local Rule 7.1

4    certificate.  I expect the parties to try and work out whatever

5    they can and present me with what's left of their dispute.  And

6    so before you file the motion to stay, if you confer, it may

7    turn out that you can agree that there's some that are going to

8    be stayed and others won't and so forth.  But do confer before

9    filing it.

02:48 10    I'm sure you'll have done your trying to read the tea

11    leaves in how I handle these types of motions, and I would say

12    the following:  I tend not to be impressed by the fact that

13    something has been filed before review has been instituted.  I

14    get these motions.  It makes me wonder about all the paper that

15    is filed everywhere.  So my -- obviously, I would look at each

16    one, but my inclination tends to be to deny the motion to stay

17    where the review has not yet been instituted.

18    Even where the review has been instituted, I am trying

19    hard -- and I don't know that I'm finding the right answer in

02:49 20    different cases, but I'm trying hard to help the parties

21    balance the dual needs of, you know, trying to prosecute or

22    defend their claims efficiently and with some respect to their

23    clients' budget.  I mean, I understand that these things tend

24    to expand -- sort of mushroom every way they can, and I try to

25    make sure that we are proceeding as -- in a streamline a way as

1    possible.

2         So I would encourage, before you bring a motion to

3    stay, see if there is any common ground.  If there is some part

4    of it that should be stayed -- again, I am not particularly

5    inclined to grant the stay if the review hasn't been

6    instituted.  The question of your not being a party to that, I

7    haven't really thought about one way or another.

8         MS. CARLAN:  Your Honor, this may be a different

9    situation as well because we're dealing with a party that is

02:50 10   not a competitor to ours.  They have no products.  So if we

11   have a stay, there's no prejudice whatsoever to the plaintiff.

12   So, you know, that's a huge part that's different, I think, in

13   this case, is it could be stayed for a long time, and there's

14   no issue for them.

15        THE COURT:  Okay.

16        MR. CHUNG:  We obviously disagree with that.

17        THE COURT:  All I could say is I strongly encourage --

18   you know, I am a little dumbfounded at times at the amount of

19   paper back and forth that I get from -- in patent cases, and I

02:51 20  wonder sometimes whether the view on both -- each side to press

21   each advantage, each possible argument, each possible angle,

22   sometimes might miss the bigger picture and that encourage -- I

23   would encourage you to try to think strategically not just

24   about what the end win might be if you put every single dollar

25   down and every single fight but rather what, in fact, makes

1    sense of how to fight this thing through and strategize

2    through.

3         I don't know -- I don't know how this issue would play

4    out if it isn't the plaintiff's -- if the plaintiff isn't

5    involved in the IPR.

6         MR. CHUNG:  I'm sorry, your Honor.  Plaintiff is

7    involved because we're the patent owner.  Acronis, defendant --

8         THE COURT:  Right, sorry, if defendant isn't involved

9    in the IPR.  I don't know how the discovery issue plays in, but

02:52 10   I do understand that there tends to be sort of a view of when

11   do you stay, when don't you stay, depending on what discovery

12   you can get here versus the fact that you're not getting it

13   there.  I just would ask that you try and see if there is a

14   smooth line to how to do this.  But I will consider your motion

15   on the merits, and we'll go from there.  In the meantime, we'll

16   set the schedule assuming there is no motion to stay.

17        With regard to the schedule, the proposed schedule, as

18   to the one patent, I guess the question is:  What is the

19   parties' view of this schedule with regard to the one patent

02:53 20   that is the subject to the motion to dismiss?

21        MS. CARLAN:  Your Honor, I think whether the patent is

22   in or out we would have the same schedule.  I think that's what

23   the parties were contemplating.  It's the same accused product

24   of defendant.

25        THE COURT:  Okay.  So it's not separate.  I haven't

1   gone through the complaint.

2           MS. CARLAN:  Exactly, your Honor.

3           MR. CHUNG:  That's correct.

4           THE COURT:  So the Rule 26 initial disclosures,

5   preliminary infringement disclosures, seems appropriate.

6           The October 4th answer date, as we -- would still be

7   in place.

8           The amendment of pleadings date, I hate to invite

9   trouble, but the way the scheduling order date interacts with

02:55 10   Rule 15 is sometimes a little bit surprising.  It seems to be

11   the practice here that, despite the liberal policies of

12   amendment under Rule 15, once you agree to a Rule 16 date for

13   amendment of pleadings, courts will take the position that you

14   need to have cause for a delay in filing a motion to amend.  So

15   if you have ongoing discovery, this is an early date that would

16   invite a circumstance where we're arguing about cause in a way

17   that I don't think is necessarily consistent with Rule 15.  So

18   while I'm very happy that you're ready to close everything down

19   as of October 20th, I think, given the practice in this court,

02:56 20   you may both mutually agree that a somewhat later date is

21   appropriate.

22           MR. CHUNG:  We can agree to that, your Honor, to a

23   later date.

24           MS. CARLAN:  I think, your Honor, that would be fine.

25   We had talked about this specifically, and -- on the phone, in

1    our conference, and felt that in this case we understood what

2    would be going forward, which is why we picked an earlier date.

3    But we could go a little bit later if necessary.

4         THE COURT:  I'm going to put two months later than

5    that just so I can avoid having to deal with the motion that

6    the parties would agree under Rule 15 is an appropriate motion

7    but that you've sort of boxed yourself in here.  So I'll make

8    that December 20th.

9         So I have a date proposed just by Acronis and not

02:57 10   Realtime.  I guess I'm not sure what the issue is here.

11        MR. CHUNG:  Defendant has proposed doing an early

12   claim construction for one claim term, "compression" or

13   "compress."  Realtime disagrees with that procedure for reasons

14   that we set forth in the joint statement starting on Page 4.

15   And one of the reasons is that it's -- for one, there's no

16   reason to do claim construction twice; and the early claim

17   construction is doing a procedure without a full record and

18   that that full record is particularly one-sided in a sense that

19   this is after plaintiff provides defendant with infringement

02:58 20   contentions but before defendant provides plaintiff with

21   invalidity contentions and noninfringement contentions.  So

22   Realtime, plaintiff, is at a particular disadvantage using this

23   procedure.

24        Second point I'd like to make is that defendant hasn't

25   shown why this particular term would be dispositive, as they

1   say.  We disagree with that.  They haven't proposed a

2   construction for that term.  They haven't explained why they

3   think it's dispositive.  So for all these reasons, we think

4   this early procedure, basically doing claim construction twice,

5   is improper and inappropriate here.

6       MS. CARLAN:  The word "compression," "compression and

7   technique," those words are in every single claim of all four

8   of these patents; and if we can get a claim construction on

9   those, we will have guidance as to whether we infringe or not.

02:59 10   We believe, under the proper construction of "compression,"

11   that we don't fall within that, our accused product.  But it's

12   not that you need discovery of the products at this point.

13   Obviously, for a Markman hearing, we will be looking at the

14   patents, the file history, the specification.  So we don't need

15   to keep going forward with -- we don't need to have discovery

16   on the product in order to decide what the claim term means in

17   the patent.  Therefore, it's appropriate to do it first.  This

18   could end everything.

19       THE COURT:  What about your invalidity contentions?

02:59 20       MS. CARLAN:  Our contentions are due on December 20th.

21       THE COURT:  Why not have those due first before you do

22   the -- I have to say, I find how the parties' understanding of

23   the overall litigation plays into claim construction to be sort

24   of an interesting question because, from my point of view, the

25   task I'm being given should not matter at all what your larger

1   picture is.  I'm just being asked to interpret the meaning of

2   the patent.  But it always seems that each side wants to know

3   in deciding what claims are important or what terms are

4   important and what arguments they want to make, they seem to

5   want to make their arguments not based on the analysis I'm

6   supposed to do but where they want to end up.  So it seems a

7   little bit of a strange thing.

8           But that said, it does seem incredibly unusual to ask

9   for any claim construction while we are still in the -- before

03:00 10   we have the invalidity and noninfringement disclosure.  I think

11   it might make more sense -- I'm quite happy with the idea of

12   just figuring out two terms instead of 30.  That's for sure.

13   And I think if the parties have, in fact, identified a few

14   terms that are -- could make the difference in whether a case

15   could be resolved or not resolved, it's certainly worth having

16   me do those rather than everything.

17           But that said, I don't know that it makes sense to put

18   that process in before you've identified the claims, the terms.

19           MS. CARLAN:  Well, your Honor, I think it's -- since

03:01 20   it's only a month apart or so, we would be willing to move the

21   expedited claim construction procedure by, say, a month so that

22   it's just slightly behind the invalidity contentions.  It's

23   still expedited.  It's still early.  But it's slightly after

24   invalidity and noninfringement contentions that Acronis will

25   file.  That would solve that problem.

1          MR. CHUNG:  I have one suggestion that we can move.

2     As we stated, we don't think it makes sense to do claim

3     construction twice.  Just because some -- one party thinks some

4     terms are dispositive, that, we don't believe, is going to

5     resolve everything in the end because we have arguments.  We've

6     heard -- Realtime has heard arguments regarding compression

7     from other defendants.  We defeated those arguments with other

8     defendants.  We don't believe, for one, it's dispositive.

9          For two, doing claim construction in a serial manner,

03:02 10    I think, complicates things and makes it harder for the parties

11    as well as the Court.  So one suggestion that I could make to

12    do everything at once is to have the one claim construction

13    that we have here a little bit sped up so that, I think,

14    addresses whatever issues about doing the claim construction

15    faster.

16          So right now we have invalidity and noninfringement

17    disclosures from defendant due on December 20th, and the next

18    date is March 16th, which is the first claim construction date.

19    If we could move that closer to December 20th, I think that

03:03 20    would address the issues.

21          MS. CARLAN:  Your Honor, the only problem with that

22    suggestion is that the reason we're thinking of an expedited

23    claim construction is because this is the one term that's in

24    every single claim, and it really will solve it.  It's

25    dispositive because, if we don't fall within that construction

1    of compression, then we don't infringe any of the patents.  So

2    that's the reason to do it early and do just that one term.

3         Doing all the claim construction will bring in any

4    other term that we could be concerned about if the

5    "compression" term, you know, wasn't the only -- it wasn't the

6    only one that's looked at, then you need to look at the

7    dependent claims.  You need to look at the other terms.  So we

8    may have a large number of terms all at once, as early as

9    December.

03:04 10         MR. CHUNG:  One comment I'd like to make, your Honor.

11    As you heard, defendant still hasn't provided their proposal

12    for "compression."  They haven't explained why it's

13    dispositive.  That's why it's helpful to get all the record

14    fuller, including infringement contentions and validity

15    contentions, their noninfringement contentions, everything

16    together so that all these things can be fleshed out in due

17    course with all the claim construction disclosures and

18    discovery that are set out in the Court's form scheduling order

19    which we have followed here.

03:04 20         Those all address -- all of those issues regarding the

21    fleshing out of what parties think are important, the terms

22    that are important, and there's really no reason to do claim

23    construction multiple times.  We can do all of it at once by

24    using set page limit that are set by the Court and the local

25    rules.

1          THE COURT:  This is what I'm going to do.  I'm going

2     to have you come up with the list of claims to be construed and

3     proposed constructions.  I'm then going to give you an

4     opportunity to decide -- or to either reach an agreement or to

5     present to me whether we're then going to deal with them

6     several at a time or all in one time or all broken up.

7          I just -- I do have to tell you that if getting an

8     answer on one or two of the terms will give people information

9     which they can then use to make good decisions about either

03:06 10   pushing forward or settling, it's worth trying to do that, and

11     that if you say to me, I need to have the whole thing decided

12     all at once, the risk you run is that I'm not going to be fast

13     about it, not because --  it may make sense to you.  You may

14     say, look, I'm going to put in 2X hours if you make me do this

15     separately, and I only have to put in X hours if you do this

16     all together.  But the amount of time that I take to decide it

17     will -- might affect your decision also in how to proceed.

18          And I am not happy that I am not moving faster on some

19     of these cases.  I'm trying to be correct because I think, if I

03:07 20   make the wrong decision, I cause the parties to take an extra

21     two or three years to go up and get it overturned.  But I just

22     -- so if the answer is these eight things are also related,

23     that, Judge, you will really regret having to do this in two

24     bites rather than one, fine, let me know.  But if there is a

25     way in which there are separate -- resolving one, even if I

1  rule in favor of -- even if I'm ruling against the party that

2  wants me to do it first, whether I rule in favor or against

3  them, it will drive where the litigation goes if something is

4  more important than something else.

5          MR. CHUNG:  I can make just one comment, is that I

6  think the danger to that approach, your Honor, is that that's

7  -- let's assume that there's one term, "compress," and let's

8  assume that -- or one term or a couple terms, and defendant

9  loses.  Now, defendant will definitely come up with another

03:08 10  term they say is, hey, we've got to construe this term.  It

11  will just go on and on, whereas if you have one claim

12  construction proceeding, you do it once and it's over, whereas

13  if you do it on a kind of serial basis of doing this, doing

14  that, the other side, defendants, will always come up with a

15  new term that they think wins them the case.  That's always

16  going to be the case.

17          THE COURT:  I'm suggesting you list your terms.  I'm

18  not going with their idea that we're going to start these two

19  and we don't even have to say what the terms are.  I am

03:08 20  suggesting that we move forward with the original list of claim

21  terms to be construed and proposed construction.  Then I am

22  suggesting to you that, just as in any other kind of case, it

23  may be that they're -- while, yes, you have fights over a

24  hundred things, there is one thing that, if you can get that

25  one out of the room, the other things fall into place.

1          And I'm just suggesting -- I wish I could tell you

2     that no matter what you file I will turn around and get you an

3     answer right away, but --

4          MR. CHUNG:  I can suggest one approach that has been

5     adopted by several different courts, including Texas and some

6     courts in California, is to limit the number of terms that the

7     parties will be addressing in one claim construction

8     proceeding.  Usually that number is ten.  So if we could limit

9     the number of disputed terms to ten and have one proceeding, I

03:09 10    think that would be the most efficient way to proceed.

11          THE COURT:  The courts have adopted that but not as a

12    bar to anything else.  What they've done is they've adopted

13    that.  They've had the claims proceed that way, and then

14    they've sort of had everyone consent to go along with that,

15    right?  I think, otherwise, we have due process arguments or

16    something where people are complaining that they haven't had

17    their claims addressed.

18          MR. CHUNG:  I think barring some kind of exigent

19    circumstances, parties generally tend to stick to the ten that

03:10 20    are ordered by the local rules or the judges.  There are

21    instances where, even at trial, new claim terms bring about,

22    but I think those are somewhat unusual.  If the Court limits

23    the one claim construction to ten, I think parties would be

24    amenable to that, or at least Realtime is.

25          THE COURT:  So I understand that there's sort of a

1    general way that you would practice and that you would prefer

2    to practice.  I don't understand why -- without having the list

3    of terms in front of you that are disputed, I don't know why

4    you can make -- how you can make the determination at this

5    juncture that there would not be some in which it would be

6    efficient to resolve those.

7         I mean, I'm missing -- I understand there's sort of

8    this is the way we always do it.  We don't want to do it in

9    pieces.  I get that argument.  I'm suggesting that I am moving

03:11 10  too slowly on patent cases.  The court overall is moving too

11   slowly on patent cases.  If there is -- if there are a couple

12   of terms that would affect one side or the other side or both

13   sides' thinking about the overall value of this litigation, it

14   might make sense to have those resolved at the front end.  No?

15        MS. CARLAN:  Your Honor, that's exactly what we're

16   asking for because we believe that's the case here.

17        MR. CHUNG:  Your Honor, we're open to that as long as

18   we get fair disclosures such as invalidity contentions and

19   noninfringement contentions before those decisions or

03:11 20  disclosures about claim terms, the list of claim terms, and

21   proposed constructions are to be decided.

22        THE COURT:  Okay.  Is there any reason that

23   preliminary invalidity and noninfringement disclosures can't

24   happen a month earlier than you've proposed once I've crossed

25   out the proposed early expedited claim construction?  So that

1    would be, say, before Thanksgiving.

2         MS. CARLAN:  I know, your Honor, that we agreed upon

3    this deadline of December 20th based upon schedules, but we may

4    have room to go back by about two weeks.  So if we were to move

5    that date back two weeks earlier from December 20th --

6         THE COURT:  I guess I'm suggesting that if we move it

7    -- if we eliminate the briefing that you would be doing on the

8    expedited claim construction, you might have more time and that

9    the -- have the preliminary invalidity and noninfringement

03:13 10   disclosures a full month earlier, say, November 20th.

11        MS. CARLAN:  I see.  Yes, your Honor.  That might --

12   if we just take the preliminary invalidity contentions to the

13   date of the brief and then move the brief to a month later,

14   sort of switch them.

15        THE COURT:  Not exactly.  I'm suggesting that -- what

16   I'm trying to do is to move up the date for the list of claim

17   terms and proposed construction.  Once we have that, to have

18   the parties have a meaningful meet and confer about whether a

19   bifurcation -- bifurcated claim proceeding makes sense and, if

03:14 20   so, identifying one, two, three claims -- terms that should be

21   construed.

22        MR. CHUNG:  That's okay with us.

23        MS. CARLAN:  Would it be possible then, your Honor, to

24   then move the March 16th date up significantly?

25        THE COURT:  That would be great.

1          MS. CARLAN:  And leave -- but leave the invalidity

2     contention at December 20th?  So the claim term date could be

3     somewhere in January instead.

4          MR. CHUNG:  We'd prefer having the invalidity and

5     noninfringement contentions November 17th, as your Honor

6     suggested, but --

7          THE COURT:  I think I suggested the 20th but --

8          MR. CHUNG:  Or the 20th.

9          THE COURT:  Okay.  This is what I would like you to

03:15 10    do:  I'd like you to go back out and anticipate that what this

11    is going to end up looking like is that the expedited claim

12    construction will not happen as proposed by the defendant but

13    that the list of claim terms will be considerably earlier than

14    the March date and, if that's appropriate, to also have the

15    preliminary invalidity and noninfringement disclosures earlier

16    as well.

17          But you know your business better than I do, so I'd

18    like to give you an opportunity to give me some new dates and

19    then have a date for filing a proposal about bifurcation or not

03:15 20    -- or early, late claim construction, whatever words you want

21    to use, so that we can get briefing of that done first and

22    slightly earlier than what you have proposed but not as -- but

23    not the super early dates that you have here.

24          You want to give another try at it and then submit --

25          MS. CARLAN:  Yes, your Honor.

1          MR. CHUNG:  Just to be clear, we're getting rid of the

2     expedited dates, the four expedited entries here?

3          THE COURT:  Correct.

4          MR. CHUNG:  And we're adding an entry after a list of

5     claim terms to be construed and proposed constructions.  The

6     entry would be filing of the proposal regarding bifurcation.

7          THE COURT:  Right.  And then everything else put in

8     terms of weeks after I tell you which claims -- which terms

9     you're construing.

03:16 10          MR. CHUNG:  How long after the proposal regarding

11     bifurcation would the opening claim construction brief would be

12     due?

13          THE COURT:  Well, what I'm suggesting is that, when

14     you give me the proposal regarding bifurcation, I will then

15     review it.  I will, hopefully, review it promptly, but I can't

16     promise exactly how quickly.  So I am suggesting you give me

17     proposed dates after my order on your proposed plan.

18          MR. CHUNG:  Understood, understood.

19          THE COURT:  And it -- I was going to say I would not

03:17 20     foreclose, when you give me that statement, a proposed

21     modification of, you know, basically saying, if you do all of

22     these ten terms, we understand that's going to need a little

23     bit more briefing; and if we only do two, it's going to require

24     a little less briefing, or whatever you think is appropriate at

25     that point, once you have made a good-faith evaluation of what

1    those claims are.

2         I urge you again -- I don't want to repeat myself, but

3    I urge you, as you strategize here, to recognize you really

4    have to include in your calculus the fact that the larger the

5    problem you're presenting to me, the, unfortunately, longer it

6    may take me to make my way through it.  Not necessarily true.

7    It's sometimes the case that you've given me a simple problem

8    and it still takes me a long time, but --

9         I also have from you that you are open to ADR.  So

03:18 10   where does that fit in in all of this?

11        MR. CHUNG:  So we have provided a settlement proposal

12   to Acronis.  They have responded.  And we have been discussing

13   mediation and so forth.  I believe both parties are open to it.

14   On Realtime side, we just don't want any mediation to be

15   unproductive, obviously.  So I think -- from my end, I think

16   the best course will be to talk with defendants a little bit

17   more, maybe provide the Court with a more concrete proposal

18   regarding whether it's a private mediation or a mediation with

19   the magistrate.  But we're open to defendant's proposal as

03:19 20   well.

21        MS. CARLAN:  We are certainly open to mediation and

22   maybe the mediation that can be done here.  At this point we do

23   feel it's a little early considering that the case has just

24   started, but we're certainly open to talking.

25        THE COURT:  Okay.  So why don't you continue to

1    discuss that with each other.  If you make a joint request

2    through to the clerk, I will make the referral to a magistrate

3    judge.

4         We also recognize that sometimes you may feel that a

5    particular magistrate judge is a better fit with your clients

6    with the type of dispute you have.  And to the extent that the

7    parties agree that they would like a referral to someone, we

8    try to accommodate that.  So see if you can do that on your

9    own.  If not, the next time I see you, I will be checking in

03:20 10   again on that same question.

11        What other issues do we have here?

12        MR. CHUNG:  There is an issue of bifurcation, which

13   defendant has proposed and we oppose.  It's set out on Page 5

14   of the joint statement.

15        MS. CARLAN:  I think Page 6 of the schedule describes

16   phase discovery.  This is what Acronis is requesting.  This is

17   a perfect case for a phase discovery where you're so separated

18   between the technical documents that Realtime Data will be

19   requesting from us.  How does our product work?  What are our

03:21 20   training materials?  Those kinds of things are what they will

21   request to understand the product.  The sales data doesn't help

22   them understand whether or not we infringe.  They do not need

23   that in the first phase.  That could be something that's done

24   in a second phase.

25        We also would be requesting from them anything related

1   to the patents:  the file histories; the invention disclosures,

2   if there are such a thing; also any of the prior art that

3   they've gathered.  We would look for all of those kinds of

4   technical documents from them in the first phase.

5        In the second phase, if they are relevant to damages,

6   we would be asking for all their licensing and those kinds of

7   financial-type documents.  So we think this is perfect for

8   phase discovery.

9        MR. CHUNG:  We disagree with defendant's proposal for

03:21 10   reasons that are set out on Page 5 of the joint statement.

11        One additional thing that I'd like to note is that

12   defendant's proposal, we think, is contrary to the local rules

13   regarding phase discovery.  The local rules state that first

14   phase of discovery should be about "realistic assessment of the

15   case."  And without a damages number, we don't think that that

16   would help with assessment of the case.  Damages are maybe one

17   of the key components of weighing whether it makes sense to

18   resolve it right away or to -- you know, in terms of weighing

19   of the settlement options.  It just doesn't make sense to wait

03:22 20   until much, much later after parties have expended a lot more

21   resources to find out that maybe damages aren't as much or

22   maybe it's a lot more.  So it just doesn't make sense to phase

23   it in the way that defendants propose.

24        MS. CARLAN:  Your Honor, with respect to mediation,

25   one of the things that often happens in these cases is that we

1    sit down in the mediation room and we say, without having to go

2    and collect all -- go through all the time and energy in

3    getting all the financial spreadsheets and documents and just

4    say, Here were our sales last year.  So those are the kinds of

5    discussions that can happen in mediation.  So if needed in

6    order to come to a resolution, that can happen there without

7    the formal discovery.  The phase discovery is preparing for

8    trial and that -- phase discovery is very appropriate in this

9    type of case.

03:23 10          THE COURT:  So I will at this point hold off on

11   discovery as to damages, but that can be subject to reopening

12   if there is a good reason why that would be appropriate.

13          My thinking is as follows:  If there is no money

14   there, if there's little damages there, you will hear about

15   that.  So I don't -- I understand that there may be a value to

16   finding out that there isn't much because you might say it's

17   not worth it, but there's also the risk that we end up having

18   cases resolve simply because the cost of discovery is too

19   burdensome.  And so I would rather limit the damages question

03:24 20   to figuring out first whether there's a real liability issue.

21   If there 's a real liability issue, we can move to that.  So at

22   this juncture, we would -- will bifurcate damages.

23          Is there -- on the ESI, that has been -- you have a

24   proposed order, which I will review.  If it's agreeable to both

25   sides, I will likely sign that.

1        One suggestion on the limitations on discovery that

2   are in our local rules, the local rules say that there shall be

3   two sets of requests for production of -- no more than two sets

4   of requests for production of documents.  At the same time, as

5   the Rules of Civil Procedure were amended -- they were amended

6   a year and a half ago -- our local rule hasn't changed.

7        But I think there's a view in the way the Rules of

8   Civil Procedure now read to really encourage people to try and

9   get at the core of their dispute first and to move to the

03:26 10   further reaches of what discovery might be appropriate as

11   needed.  But as sort of a first matter, you try to make sure

12   you can understand where the core dispute is, what the facts

13   are as to the core dispute.

14        So an argument -- a good argument could be made that,

15   rather than trying to get all your requests for production of

16   documents that you could possibly think of into a first set of

17   requests for production of documents and that you use your

18   second set only of the clean-up of something you might have

19   forgotten to ask for, there is a good argument for limiting

03:26 20   your first set of requests for production of documents to sort

21   of the core dispute and then have a second set once you've sort

22   of made your way through that.

23        I am not at this point removing the limit on two, but

24   I am open to the idea that, as a concerted strategy to keep

25   your costs for your clients down and to get at the heart of the

1   dispute, that you phase -- that you ask in series of -- that

2   you ask in more than one set rather than all at once in the

3   hope that, perhaps after getting your responses to the first

4   set, you might close down some unnecessary discovery.

5        MR. CHUNG:  One comment I'd like to make is that

6   because the Court has just determined to bifurcate discovery,

7   we would request that there be two RFPs per phase.

8        THE COURT:  I think that's appropriate.

9        MR. CHUNG:  Okay.  Thank you.

03:28 10        THE COURT:  I haven't reviewed your stipulated

11   protective order yet.  I will review it.  As you may have

12   heard, if you were here during the earlier one, my practice is

13   as follows on protective orders:  I have no problem with your

14   exchanging everything with each other pursuant to a protective

15   order.  I have a difficulty with your making the decision of

16   what I should allow to be filed under seal.

17        So the mere fact that you have agreed with each other

18   that certain things should be maintained as confidential during

19   the discovery process doesn't mean that those same documents --

03:28 20   that I would agree they should be filed under seal when it

21   comes time for a dispositive motion.  What you will need to do

22   at that point when you want to file something in terms of a

23   claim construction or some other place where you want me to be

24   wrestling with the material, is you need to file a motion to

25   seal and to have me determine whether this, in fact, meets the

1   requirements of the rule.

2           And I encourage wherever possible that, rather than

3   filing sealed documents, if you can agree to redact documents

4   so things that you care about as confidential but you don't

5   need me to see, you simply redact, and then we don't have to

6   deal with this problem.

7           At the claim construction hearing, I will ask in

8   advance, as we get close, what the parties intend regarding the

9   evidence they want to introduce, but I'm certainly open to

03:29 10  there being live testimony if that's what you would like.

11          Yeah, so you're filing under seal that I should

12   authorize the filing under seal of any documents that you deem

13   confidential I don't think works in the First Circuit.

14          Anything else?

15          MR. CHUNG:  Not from plaintiff.

16          MS. CARLAN:  Not from Acronis, your Honor.  Thank you.

17          THE COURT:  And if at any time it would be helpful to

18   have a further status conference on this, you're welcome to

19   jointly request from the clerk that we set one up.  But we'll

03:30 20  try to keep it moving.

21          MR. CHUNG:  Thank you.

22          THE CLERK:  Court is in recess.

23   (Whereupon, at 3:30 p.m. the hearing concluded.)

24

25

1                       C E R T I F I C A T E

2

3

4            I certify that the foregoing is a correct transcript

5    of the record of proceedings in the above-entitled matter to

6    the best of my skill and ability.

7

8

9

10

11

12    /s/Cheryl Dahlstrom

13    Cheryl Dahlstrom, RMR, CRR

14    Official Court Reporter

15

16    Dated:  October 3, 2017

17

18

19

20

21

22

23

24

25