**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| REALTIME LLC d/b/a IXO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ACRONIS, INC.,<br><br>　　　　Defendant. | C.A. No. 1:17-CV-11279-IT<br><br>(LEAD CASE) |
| v.<br><br>CARBONITE, INC.,<br><br>　　　　Defendant. | C.A. NO. 1:17-CV-12499-IT<br><br>(CONSOLIDATED) |

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     REALTIME'S PROPOSALS FOR THE DISPUTED CLAIM TERMS ARE
        UNSUPPORTED, INCORRECT, AND CONTRARY TO CLAIM
        CONSTRUCTION LAW.............................................................................................1

        A.      Compression ...................................................................................................1

                1.      Realtime's Original Construction of "Compression" Is Entirely
                        Unsupported.........................................................................................3

                2.      Realtime's Alternative Proposal Also Misses the Mark ...........................5

                        a.      Realtime's own extrinsic evidence also supports
                                Defendant's proposed construction that the encoded data
                                can be decoded to expanded form.......................................................6

                        b.      Realtime's argument that Defendants' proposal injects
                                ambiguity because of the phrase "the encoded data can be
                                decoded to expanded form" is unavailing.......................................7

                        c.      Plaintiff's construction is an impermissible attempt to
                                capture an unsupported claim scope ...............................................8

        B.      "Descriptor/ token" .......................................................................................9

                1.      Contrary to Realtime's Argument, Defendants Are Not Arguing or
                        Suggesting that There Is Any Disclaimer or Disavowal..............................9

                        a.      Plaintiff appears to be confused about its own patent with
                                respect to different variations of descriptor, including the
                                difference between "file type descriptors" and "data
                                compression type descriptor"..........................................................10

                        b.      Realtime's attempt to use the legal principle of claim
                                differentiation is flawed ..................................................................11

        C.      "Data stream"...............................................................................................12

        D.      "Excludes analyzing based solely on a descriptor" .............................................14

        E.      "Data Accelerator" and "Processor".................................................................15

                1.      "Data accelerator" fails to recite sufficiently definite structure to
                        avoid means-plus-function construction ....................................................15

                2.      "Processor" in the claims at issue fails to recite sufficient structure
                        to avoid means-plus-function construction ................................................18

                3.      Corresponding structure for § 112, ¶ 6 computer-implemented
                        functions is the algorithm disclosed in the specification .........................20

III.    CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aircraft Tech. Publishers v. Avantext, Inc.*,
No. C 07-4154, 2009 WL 3817944 (N.D. Cal. Nov. 10, 2009)................................................4

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech*,
521 F.3d 1328 (Fed. Cir. 2008)........................................................................................20

*Bell Commc'ns Research Inc. v. Vitalink Commc'ns Corp.*,
55 F.3d 615 (Fed. Cir. 1995)..............................................................................................8

*Camreta v. Greene*,
563 U.S. 692 (2011)............................................................................................................4

*In the Matter of Certain Intraoral Scanners and Related Hardware and Software*,
No. 337-TA-1090, slip op. (Sept. 25, 2018) ..........................................................................18

*GoDaddy.com, LLC v. RPost Commc'ns Ltd.*,
No. CV-14-00126, 2016 WL 212676 (D. Ariz. Jan. 19, 2016) .............................................18

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
884 F.3d 1350 (Fed. Cir. 2018)..........................................................................................9

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008).........................................................................................14

*On Demand Machine Corp. v. Ingram Indus., Inc.*,
442 F.3d 1331 (Fed. Cir. 2006)..........................................................................................8

*Pfaff v. Wells Elecs., Inc.*,
5 F.3d 514 (Fed. Cir. 1993) ...............................................................................................9

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)................................................................................4, 10, 13

*Realtime Data, LLC v. Morgan Stanley*,
554 F. App'x 923 (Fed. Cir. 2014) .................................................................................9, 12

*SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001)........................................................................................10

*St. Isidore Research, LLC v. Comerica Inc.*,
No. 2:15-cv-1390, 2016 WL 4988246 (E.D. Tex. Sept. 19, 2016).........................................18

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*
782 F.3d 671 (Fed. Cir. 2015)..................................................................................4

*WMS Gaming Inc. v. Int'l Game Tech.*,
184 F.3d 1339 (Fed. Cir. 1999)..............................................................................20

**Statutes**

35 U.S.C. § 112, ¶ 6................................................................................... *passim*

## I.     INTRODUCTION

Defendants Acronis, Inc. ("Acronis") and Carbonite, Inc., ("Carbonite") submit this responsive brief pursuant to the Court's Consolidated Scheduling Order (Dkt. 62) regarding the construction of certain terms of U.S. Patent Nos. 7,415,530 ("the '530 patent"), 9,116,908 ("the '908 patent), 9,054,728 ("the '728 patent"), and 8,717,204 ("the '204 patent") (collectively the "Asserted Patents").

## II.    REALTIME'S PROPOSALS FOR THE DISPUTED CLAIM TERMS ARE UNSUPPORTED, INCORRECT, AND CONTRARY TO CLAIM CONSTRUCTION LAW

Realtime's positions on the Disputed Terms are unsupported by the intrinsic and extrinsic evidence, and do not reflect what a person of ordinary skill in the art would have understood as the meaning of the claim terms in the context of the Asserted Patents at the time of the invention. Accordingly, for the reasons set forth in detail below, Defendants' proposed constructions should be adopted.

### A.     Compression
**"Compressed [data] / [data block] / [data stream] / [form]"** [1]

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| "compressed [data] / [data block] / [data stream] / [form]" | data that is represented with fewer bits<br><br>Alternatively: data that is reduced in size | data encoded to reduce its size, where the encoded data can be decoded to expanded form |

---

[1]  The Asserted Patents use various forms of the word "compressed," including "compressed data," "compressed data block," "compressed data stream," and "compressed form." Unless otherwise stated, Defendants collectively refer to these terms as the "compressed data" or the "compression" terms for purposes of claim construction.

**"Compressing / Compression"**

| Term | Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| "Compressing / Compression" | [Representing / representation of] data with fewer bits<br><br>Alternatively: [reducing / reduction of] the size of data | encoding to reduce the size of data, where the encoded data can be decoded to expanded form |

Realtime offers lip service to the requirement that claims should be construed consistent with the intrinsic evidence as it instead largely relies on selective extrinsic evidence of (i) its expert's Dr. Kenneth Zeger's declaration (Dkt. 82–12) ("Zeger Decl.") and (ii) the legally irrelevant argument that "***dozens*** of companies that develop and use compression products have stipulated that 'compressing' means 'representing data with fewer bits.'" Plaintiff Realtime Data LLC's Opening Claim Construction Brief (Dkt. 82) ("Realtime Br.") at 6 (emphasis in original). The only intrinsic support that Realtime offers for its proposed construction is an instance when less than all of the Asserted Patents state that compression allows data to be represented "more efficiently." *Id.* at 5–6. As discussed in more detail below, Realtime's original proposed construction is flawed for many reasons.

Realizing that it had no legitimate basis for its original construction, Realtime shortly before the deadline for the parties' opening briefs provided an alternative proposal of "data that is reduced in size" / "reducing/reduction of the size of the data." *See* Defendants' Opening Claim Construction Brief (Dkt. 81) ("Def. Br.") at 6 n.8. While this alternative seemingly moves closer to the proper meaning of the term, there are a number of glaring problems with it: 1) the definition completely, likely purposefully, fails to include the "encoding" aspect of compression that is discussed throughout the specification of each Asserted Patent; and 2) the definition does not address a key technological feature of compression—that compression allows for compressed data

2

to be reconstructed to expanded form, whether it be reconstruction of an exact copy of the original data (i.e., lossless compression) or reconstruction of an acceptable approximation (i.e., lossy compression).

### 1.    Realtime's Original Construction of "Compression" Is Entirely Unsupported

Realtime's proposal that the compression terms should be construed as "data that is represented by fewer bits" is not grounded in the claims and specifications of the Asserted Patents.[2] Realtime's limited citations to the intrinsic evidence do not advance its position.  For example, Realtime cites to the '530 patent specification and argues that "compression works by 'representing information more efficiently.'"  Realtime Br. at 5 (also citing the '530 patent at 2:15–19: "data compression economizes on data storage and allows more information to be stored for a fixed memory size *by representing information more efficiently*.") (emphasis in original).  These citations, however, do not suggest that Realtime's construction—"represent[ing] with fewer bits"—is how such efficiencies are achieved.  Instead, the intrinsic evidence shows it is the encoding of data to reduce its size that makes storage more efficient.  *See e.g.*, Ex. A at 6:41–47[3], 11:40–57, 12:25–30; *see also* Ex. C at 4:5–33.

As taught by the Asserted Patents, an important aspect of "compression" is transforming (i.e., encoding) data into a smaller form, where the transformed data can be reconstructed (i.e., decoded) at a later time.  Ex. C at 2:1–26.  The Asserted Patents further recognize that data, when compressed, is encoded to reduce its size, and then reconstructed to its original form (lossless) or

---

[2] Realtime's proposal also fails to articulate what compression is and instead attempts, albeit unsuccessfully, to describe what compression does. Such result-oriented construction is legally flawed because it fails to define with any reasonable precision the proper scope of the claim term.

[3] All cites to exhibit letters A through V are to exhibits previously filed with Defendants' Opening Claim Construction Brief (Dkt. 81).

some acceptable approximation of its original form (lossy).[4] Ex. A at 1:52–2:9, *see also* Realtime Br. at 6 (citing the '728 patent at 2:3–24).  Realtime's expert, Dr. Zeger, points to the same intrinsic evidence and adds nothing further (Zeger Decl., ¶ 18).  In fact, this intrinsic evidence supports *Defendants'* proposed construction rather than Realtime's, as it describes compression as encoding data with lossless or lossy encoders to reduce the size of that data, where the encoded data can be decoded back into an expanded form.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'") (citation omitted).  Finally, the extrinsic evidence confirms Defendants' proposed construction.  Ex. G at 405 ("Data compression…is the process of transforming a body of data into a smaller form from which the original or some approximation of the original can be recovered at a later time.").

Further, Realtime's reliance on agreed constructions with other defendants in other cases regarding the meaning of "compression" as purported "evidence" in support of its construction is legally irrelevant.  Such extraneous agreements have no probative value to guide the Court in construing the compression terms in this case.  *Vasudevan Software, Inc. v. MicroStrategy, Inc.* 782 F.3d 671, 678 (Fed. Cir. 2015). Moreover, Realtime's citation to a magistrate judge's opinion from the Eastern District of Texas is also not controlling here.  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *see also Aircraft Tech. Publishers v. Avantext, Inc.,* No. C 07-4154, 2009 WL 3817944, at *3 (N.D. Cal. Nov. 10, 2009).  Importantly, the Federal Circuit has not reviewed, let alone affirmed, the construction of the "compression" terms adopted by the magistrate judge in

---

[4] Contrary to Realtime's assertion (Realtime Br. at 7-8), the phrase "expanded form" in Defendants' proposed construction does not exclude lossy compression or any embodiment of the Asserted Patents; the phrase encompasses both reconstruction of the original data (lossless compression) and reconstruction of an acceptable approximation of the original data (lossy compression).

Texas.

Because Realtime's proposals lack intrinsic and extrinsic support, this Court should reject Realtime's construction.

### 2.      Realtime's Alternative Proposal Also Misses the Mark

Realtime, perhaps recognizing that it had no basis for its original construction, provided an alternative proposal at the eleventh hour that "compressed data" can also be "data that is reduced in size." *See* Def. Br. at 6 n.8.  As noted above, while this alternative proposal facially appears to align closer with Defendants' proposed construction, Realtime's alternative includes several important deficiencies: 1) the alternative fails to include the "encoding" aspect of compression; and 2) the alternative does not address the ability to reconstruct compressed data to expanded form—a key feature of compression.   *See e.g.*, Ex. C at 2:3–26 (describing features of compression).

Defendants agree that with compression, the data itself is reduced in size, but the disputed "compression" terms must also include that it is *encoding* that enables the reduction in size.  This feature, paired with the capability to *decode* the compressed data to expanded form, is what distinguishes compression from other data processing technologies.  Def. Br. at 10–12; *see also* 2–4 (describing data deduplication). All of the Asserted Patents describe that the data is reduced in size through an encoding technique.  *See, e.g.*, Ex. C at 2:3–6 and 7:25–31; 4:5–18 ("data compression comprises: *encoding the data block* with a plurality of encoders to provide a plurality of *encoded data blocks*…selecting for output *the encoded data block* having the highest compression ratio"); Ex. B at 14:5–13; Ex. A at 6:42–47; Ex. D at 7:5–8; *see also* Ex. B at FIG. 5; Exs. A and D at FIG. 8; Ex. C at FIGs. 2, 4, 6, 8, 9, 13B, 15B, 17B.[5]  Even a cursory review of the

---

[5] Tellingly, Realtime selectively excises its citations to the patent specifications to omit any reference to encoding/decoding data.  *See e.g.*, Realtime Br. at 6 (selectively quoting the '728

patents shows that "encoding" is a fundamental feature of compression.  *See* Ex. B at Title ("Methods for Encoding and Decoding Data"); Exs. A and D at Abstract ("A data storage accelerator includes one or a plurality of high speed data compression encoders."); Ex. C at Abstract ("In one aspect, a system for compressing data comprises:  a processor, one or more content dependent data compression encoders; and a single data compression encoder.")[6]  Further, the extrinsic evidence confirms that encoding is what reduces the size of the data in data compression.  *See* Declaration of Charles Boncelet (Dkt. No. 81–1) ("Boncelet Decl.") at ¶ 19; *see also* Ex. F at 4.

Therefore, Realtime's alternative proposed construction of the "compression" terms should be rejected.

> ### a.   Realtime's own extrinsic evidence also supports Defendant's proposed construction that the encoded data can be decoded to expanded form

In support of its alternative proposed construction and in attempt to distract from the intrinsic evidence unfavorable to Realtime's position, Realtime procured the declaration of Dr. Zeger who cites to a number of dictionaries as purportedly supporting Realtime's construction. *See* Realtime Br. at 7 (*citing* Zeger Decl., ¶ 19). However, even Realtime's expert supports Defendants' position that the compressed data must be encoded in a manner that it can be restored or decoded back to expanded form. *See, e.g.*, Zeger Decl., ¶ 19:

> **compress[:]** To reduce the size of a set of data, such as a file or a communications message, so that it can be stored in less space or transmitted with less bandwidth. Data can be compressed by removing repeated patterns of bits and replacing them with some form of summary that takes up less space; ***restoring the repeated patterns decompresses the data***.

---

patent to omit "encode/decode data" and "the decoded (or reconstructed) data differs from the original unencoded/uncompressed data").

[6] Indeed, Realtime argues at the outset of its brief that "utilizing different compression encoders to compress data blocks" is exactly what these patents are about.  Realtime Br. at 2.

Ex. W[7]; *see also* Ex. X ("Data compression…. Some methods can be reversed to reconstruct the original data exactly (*lossless data compression*)…. Other methods (*lossy data compression* ) do not exactly reproduce the original data, but this may be acceptable….").

> **b.** **Realtime's argument that Defendants' proposal injects ambiguity because of the phrase "the encoded data can be decoded to expanded form" is unavailing**

Realtime faults Defendants' proposed construction because it includes the concept that compressed data can be "decoded to expanded form." Realtime Br. at 7. Realtime argues that it is allegedly unclear on its face what "decoded to *expanded* form" means, and suggests that the "expanded form" must refer to the identical "original form" of the data. Realtime Br. at 7–8. Realtime is wrong.

Contrary to Realtime's argument, Defendants do not propose that the data need be decoded back to its *identical* original form in all cases. Instead, the Asserted Patents disclose two different techniques: under one compression technique (lossy compression), "the decoded (or reconstructed) data differs from the original unencoded/uncompressed data," while in another technique (lossless), "the decoded (or reconstructed) data is identical to the original unencoded/uncompressed data." Ex. C at 2:7–24; Ex. A at 1:56–2:11; Ex. D at 1:57–2:12. The Asserted Patents disclose that some applications use lossy data compression (such as visual data that contains data "in excess of the display resolution"), *see* Ex. C at 2:17–19, and other applications use lossless compression ("the decoded (or reconstructed) data is identical to the original unencoded/uncompressed data"), *see* Ex. C at 2:23–24. Defendants' construction— requiring that compressed data has the capability to be "decoded to expanded form"— encompasses both lossy and lossless compression.

---

[7] All emphasis in this briefing has been added unless otherwise noted.

7

Moreover, Realtime's suggestion that Defendants' proposed construction focuses on the accused products is incorrect.   Realtime Br. at 7.   To the contrary, Defendants propose a construction that is of proper scope, based upon the intrinsic evidence. In fact, in the opening brief, Defendants expressly indicated that any discussion of the accused products was to provide context to the dispute. *See* Def. Br. at 2 n. 3.  To be sure, it is the intrinsic evidence which Defendants rely upon, that shows "compressed data" must retain *at least some* original information so that it *can be restored* to its expanded form at a later time.  *See, e.g.*, Ex C at 2:1–28.  Moreover, the '728 patent specifically incorporates by reference a disclosure that teaches that "[d]ata decompression is the conversion of a *stream of compressed data back to its original expanded form*." *See* Ex. C at 3:20–24 (*incorporating* Ex. K at 3:23–24).  The other Asserted Patents also refer to the fact that compressed data can be decoded after storage and/or transmission.  *See* Ex. A at 6:57–61, 10:21–26, 14:16–27; Ex. B at 9:31–44, 14:37–41, 17:15–26; Ex. D at Figs. 3, 5b, 7a, 7b, 9; *see also* Boncelet Decl., ¶¶ 22, 24.

### c.   Plaintiff's construction is an impermissible attempt to capture an unsupported claim scope

Realtime's transparent attempt, even with its alternative construction, to broaden the claims beyond the patent disclosure is contrary to law. *See, e.g.*, *On Demand Machine Corp. v. Ingram Indus., Inc*., 442 F.3d 1331, 1340 (Fed. Cir. 2006) ("[T]he role of the specification is to describe and enable the invention. In turn, the claims cannot be of broader scope than the invention that is set forth in the specification."); *Bell Commc'ns Research Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 621–22 (Fed. Cir. 1995) ("[I]t is legal error to construe a claim by considering it in isolation. A claim must be read in view of the specification of which it is a part."); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed.Cir.1998).

Here, the intrinsic evidence overwhelmingly supports Defendants' proposed construction.

Absent intrinsic support, Realtime leans heavily on its expert as to how one of ordinary skill would purportedly construe the compression terms. *See* Zeger Decl., ¶¶ 18–20.  However, even there, Realtime falls short as its own expert supports Defendants' contention that compressed data is encoded in such a manner that it can be decoded back to an expanded form. *See* Section A(2)(a) *supra*. Dr. Zeger's remaining positions are rebutted by the expert declaration of Dr. Boncelet. *See* Boncelet. Decl.

For the foregoing reasons, Defendants respectfully request that their proposed construction be adopted.

**B.**      **"Descriptor/ token"**

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "descriptor / token"[8] | recognizable data | recognizable data that is appended to the compressed data that shows which encoder has been applied to the data block |

Realtime ignores the finding of the Federal Circuit in the *Morgan Stanley* case, where this claim language was construed as proposed by Defendants.  *See Realtime Data, LLC v. Morgan Stanley*, 554 F. App'x 923, 932 (Fed. Cir. 2014).[9]  While that holding is controlling and should end the inquiry, Defendants briefly address Realtime's arguments below.

**1.**      **Contrary to Realtime's Argument, Defendants Are Not Arguing or Suggesting that There Is Any Disclaimer or Disavowal**

Realtime argues that the Defendants' construction is improper because "the intrinsic record does not include any disclaimer or disavowal of claim scope requiring" the "appended to the

---

[8] Realtime does not dispute that the claim terms "descriptor" and "token" have the same meaning.

[9] Realtime is estopped from advancing a different construction here. *Pfaff v. Wells Elecs., Inc.,* 5 F.3d 514, 518 (Fed. Cir. 1993) (citation omitted); *see also Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1351 (Fed. Cir. 2018).

compressed data" portion of Defendants' construction.  Realtime Br. at 9.  Defendants, however, are not arguing that there is a disavowal that results in the proposed claim construction.  A disavowal requires that "the specification makes clear that the invention does not include a particular feature." *SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001). That is not at issue for this term.  Instead, Defendants' construction, as confirmed by the Federal Circuit, is the ordinary meaning of the disputed term when considered in the context of the Asserted Patents.

Thus, it is the context of the patents that supports the Defendants' proposed construction, not a disclaimer. Indeed, it is axiomatic that the plain and ordinary meaning of a term is informed by the patent specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").  Here, the intrinsic evidence for each of the three patents specifies that the recognizable data is "appended" to the encoded data to show which encoder has been applied to the data block.  *See* Ex. C at 8:62–63 ("[a]n appropriate data compression type descriptor is then ***appended***"); *Id.*, Fig 3b; Ex. A at 12:33–38 ("[a] description module 38…***appends*** a corresponding compression type descriptor to each encoded data block"); Ex. D at 12:59–64. The patents do not disclose any other ways a descriptor is used. Thus, the meaning that a POSA would find for "descriptor/ token" is Defendants' proposal.

> a.    **Plaintiff appears to be confused about its own patent with respect to different variations of descriptor, including the difference between "file type descriptors" and "data compression type descriptor"**

Realtime also argues that the Asserted Patents do not require that the descriptor is "appended to the compressed data" because "the '728 patent states that '***file type descriptors*** are typically appended to file names'…which contradicts Defendants' proposal in two ways."

Realtime Br. at 9–10 (*citing* Ex. C at 3:2–6). Specifically, Realtime argues that appending is not a requirement because of the use of the word "typically" in the above citation and that the "file type descriptor" appears to be associated with uncompressed data. *Id.* Realtime is apparently confused about its own patent.

Notably, the section of the '728 patent containing Realtime's quote is describing the problems in the prior art, not the (alleged) invention. Indeed, Defendants' Opening Claim Construction Brief points out that the '728 patent uses the term "descriptor" with respect to a "***file type descriptor***" differently than the "***data compression type descriptor***" that is appended to the compressed data. *See* Def. Br. at 2 n.3. The "file type descriptor" in the '728 patent addresses the problem in the prior art of "determining the optimal compression technique for a given set of input data and intended application."[10] Ex. C at 2:65–3:19. In contrast, "[a] data compression type descriptor is defined as any recognizable data token or descriptor that indicates which data encoding technique has been applied to the data." *Id.* at 8:63–66. Thus, while the "file type descriptor" identifies the contents of the ***input data block*** (i.e., whether it is ".txt," ".doc," or ".xls"), the "data compression type descriptor" identifies the compression algorithm and is attached to the ***output data block***.

The simple fact that Realtime is easily confused about the different uses of "descriptors" in the '728 patent is more reason that Defendants' proposed construction should be adopted because it clarifies what "descriptor / token" means in the asserted claims.[11]

        **b.**      **Realtime's attempt to use the legal principle of claim**

---

[10] Oddly, in a different portion of its brief, while discussing the "excludes analyzing based solely on a descriptor" term, Realtime recognizes there that "[i]n fact, 'file type descriptor' is mentioned ***only in the 'Background' section*** of the '728 patent specification." Realtime Br. at 12.

[11] This is also the reason that the disputed term "excludes analyzing based solely on a descriptor," discussed separately below, should be construed since the descriptor there *is* associated with the uncompressed data.

**differentiation is flawed**

Realtime appears to argue that claim differentiation between independent claim 24 and dependent claim 25 of the '530 patent "contradicts Defendants' 'appended' requirement." Realtime Br. at 10. It does not. Realtime, again, appears to be mistaken about its own patent.

Realtime argues that there is an inconsistency in the use of the word "descriptor" between independent claim 24 and dependent claim 25, and therefore Defendants' proposed construction cannot be correct. Realtime states that "it is black letter law that 'the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.'" *Id.* (citation omitted). While Realtime correctly states the law, Realtime is wrong on the underlying facts. Dependent claim 25 depends from **independent claim 1** and ***not*** from independent claim 24. *See* Ex. A, claim 25. There is no inconsistency between claims 1 and 25.

Therefore, in light of the construction adopted by the Federal Circuit in its *Morgan Stanley* decision and the other reasons discussed above, Defendants respectfully request that the disputed term "descriptor / token" is construed as "recognizable data that is appended to the compressed data that shows which encoder has been applied to the data block."

C.      **"Data stream"**

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "data stream" | one or more data blocks transmitted in sequence | one or more uncompressed blocks transmitted in sequence from an external source whose characteristics are not controlled by the data encoder or decoder |

Realtime again ignores the finding of the Federal Circuit in the *Morgan Stanley* case where this claim term was construed. *See Morgan Stanley*, 554 F. App'x at 933–34. As noted in Defendants' Opening Claim Construction Brief, the Federal Circuit previously rejected the same

12

arguments that Realtime presents here because Realtime's prior expert, Dr. Modestino, had "ma[de] clear that a person of ordinary skill would understand that a data stream…means a ***data stream received from an external source***." Def. Br. at 19–20.  While the appeals court decision controls, Defendants briefly address the two arguments Realtime raises.

First, Realtime states that the "data stream" cannot be construed as "uncompressed" because claim 1 also refers to "compressed data stream."  Realtime Br. at 11.  This argument shows that *Defendants'* proposal is correct, based on simple grammar.  The word "compressed" is added in front of "data stream" in order to modify the term.  When "compressed" modifies data stream it is referring to data blocks that have already been compressed.  When "compressed" is not modifying the term, "data stream" is uncompressed.  *See* Ex. A, claim 1.

Second, Realtime argues that Defendants' construction, which includes the language "the data encoder or decoder," cannot be correct because it lacks "antecedent basis."  Realtime Br. at 11.  It appears that Realtime is confusing antecedent basis law.  That law applies to proper claim drafting and states that within a claim, a term can be unclear when it includes "the" or "said" with no earlier context *in that same claim* (i.e., "the lever" is used in a patent claim but there is no earlier limitation in the claim with the word lever, so it is unclear what "the lever" is referencing.).  *See* Ex. BB. Here, when determining claim construction, there is no requirement (and certainly Realtime cited none) that an "antecedent basis" for the proposed construction appear within the claim itself.  Instead, the patent specification discloses the context and the framework that provides a person of ordinary skill in the art with guidance as to the meaning of the terms.  *Phillips*, 415 F.3d at 1313.

For the above reasons, Defendants respectfully request that the Court adopt their proposed construction of "data stream."

13

### D.    "Excludes analyzing based solely on a descriptor"

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| "excludes analyzing based solely on a descriptor that is indicative of the one or more parameters or attributes of the data within the data block" | No construction necessary | analyzing the content of the data within a data block using a technique in addition to using a file type descriptor |

Realtime argues that this claim phrase "is readily understood by a POSA" and therefore no construction is necessary. Realtime Br. at 12. However, as noted in Section II.B *supra* with respect to the disputed term "descriptor," Realtime has conflated the claim terms of the '728 patent.

At issue is whether the plain and ordinary meaning is sufficient or whether further definition of the scope of the plain meaning is required. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361 (Fed. Cir. 2008) (holding that court cannot determine that "a claim term…has the 'plain and ordinary meaning'…when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."). Here, the jury will benefit from further clarification of this disputed term.

Defendants agree that plain English can be a guide here, but that it supports Defendants, not Realtime.  The plain English meaning of "***excludes*** analyzing ***based solely on*** a descriptor…" conveys that the descriptor itself is *also* analyzed in addition to the "data within a data block."[12] *See* Ex. C, claim 1.   In other words, the claim does not include a system that analyzes data by using a descriptor alone.  Instead, the claim requires that analyzing is done by a descriptor and at least one other thing.  Realtime argues that "the claim requires only one single analysis." Realtime

---

[12] The '728 Patent uses the term "descriptor" here with respect to a file type descriptor differently than the earlier discussed "descriptor" that was a data compression type descriptor appended to the compressed data.  *See* Section II.B *supra*.

Br. at 12. However, this is not the plain English meaning of "excludes analyzing based solely on." As noted in Defendants' Opening Claim Construction Brief, had Realtime intended to completely exclude *any* consideration of the descriptor, Realtime could have simply omitted "based solely on" from the claim language such that the limitation would have been "excludes analyzing [] a descriptor that is indicative of the one or more parameters or attributes of the data within the data block." Def. Br. at 21. However, Realtime chose not to do that here as it had with a related patent, U.S. Patent No. 8,933,825 ("determining whether a parameter or attribute of data is…wherein the determining excludes determining based upon a descriptor indicative of a parameter or attribute of the data"). Ex. M, claim 23.

Therefore, Defendants respectfully request that the Court adopt their proposed construction of "analyzing the content of the data within a data block using a technique *in addition to* using a file type descriptor."

### E.    "Data Accelerator" and "Processor"

For these terms, the parties dispute two issues: (1) whether means-plus-function construction is invoked in accordance with 35 U.S.C. § 112, ¶ 6[13]; and (2) if § 112, ¶ 6 applies, whether the corresponding structure for the means-plus-function construction must include the algorithm disclosed in the specification for performing the computer-implemented functions recited in the claims.

### 1.    "Data accelerator" fails to recite sufficiently definite structure to avoid means-plus-function construction

In *Williamson v. Citrix Online, LLC*, the Federal Circuit held that absence of the word "means" no longer triggers a "strong" presumption that functional claiming is not subject to § 112,

---

[13] The functional phrases associated with each term are identified in Defendants' Opening Brief and the parties' JCCS. *See* Def. Br. at 24 ("data accelerator"), 25-26 ("processor"); *see also* JCCS, Dkt. 76-01 at 3-8.

¶ 6.  792 F.3d 1339, 1349 (Fed. Cir. 2015) (en banc).  Here, the presumption against § 112, ¶ 6 is readily overcome for "data accelerator" because the term "fails to 'recite sufficiently definite structure.'"  *Id*. (citation omitted).  Indeed, the term "data accelerator" is a made-up abstraction that does not have a recognized meaning in the art.  *See e.g.*, Ex. A at Fig. 1 (illustrating "data accelerator" as a functional black box); 3:62–63 (describing Fig. 1 as "a block diagram of a system for accelerated data storage"); 4:50–54 (generally describing that "the present invention is implemented on a computer platform").  This lack of meaning and structure is further confirmed, for example, by Realtime's inability to proffer a single dictionary definition for "data accelerator" or demonstrate the term's use in any technical literature.  In an attempt to avoid means-plus-function construction, Realtime turns to its hired expert and argues that "data accelerator" recites sufficiently definite structure because the term is understood by a POSA to connote "a specific class of structures" and that the terms "data" and "accelerator" have common meanings that inform the meaning of "data accelerator."  Realtime Br. at 14.  Contrary to these positions, Realtime was forced to concede in another case that "data accelerator" is actually a coined term that would not have a commonly understood meaning in the art:

> At the Markman hearing, the parties agreed that the term "data accelerator" is a **coined term**.  (Doc. No. 157 (Hearing Tr.), 31:22–25 ("Realtime does not dispute that the term 'data accelerator' read in a vacuum, just those two words, **would not have a commonly understood meaning** to a person of ordinary skill in the art.)

Ex. O at 17.  Following this concession, Realtime agreed in yet another case that "data accelerator" invokes means-plus-function construction subject to § 112, ¶ 6.  Ex. N at 15.  Realtime's attempt to avoid § 112, ¶ 6 in this case, after having agreed to such treatment in prior litigations, is foreclosed by the doctrine of collateral estoppel.  *See* Def. Br. at 25.

Realtime further argues that "data accelerator" recites sufficient structure because "the specification describes 'data accelerator' as one or more compression encoders."  Realtime Br. at

14. Rather than connoting sufficiently definite structure to avoid § 112, ¶ 6, the '530 and '908 patents describe conventional compression that employs encoding/decoding *functionality*. Ex. A at 11:5–10. For example, the '530 patent describes Figure 8 as illustrating an "encoder ***module*** 25" that includes encoding functionality capable of implementing various compression "encoding techniques" known in the art. *Id*. at 11:40–48. Significantly, the Federal Circuit has held that "'[m]odule' is a well-known nonce word that can operate as a substitute for 'means' in the context of § 112, para. 6." *Williamson*, 792 F.3d 1339, 1350. That is, "'module' is simply a generic description for software or hardware that performs a specified function." *Id*. As such, the '530 and '908 patents' disclosure of an encoder ***module*** fails to save "data accelerator" from means-plus-function construction.

Realtime's endgame appears to be to avoid limiting "data accelerator" to any particular structure. For example, Realtime argues that "data accelerator" should be construed to mean "hardware or software with one or more compression encoders," regardless of whether § 112, ¶ 6 applies. Realtime Br. 16. However, in other cases, Realtime has taken the position that "encoder" means "hardware and/or software that performs data compression." Ex. O at 21. When considered together, Realtime's construction of "data accelerator" distills to the following:

> hardware or software with one or more [hardware and/or software that performs data compression]

Accordingly, Realtime's construction of "data accelerator" is effectively "[a black box] that performs data compression." This is exactly the type of "functional claiming untethered to § 112, para. 6 and free of the strictures set forth in the statute" that the Federal Circuit sought to eliminate in overruling the "strong" presumption against means-plus-function construction that previously existed in the absence of the word "means." *Williamson*, 792 F.3d at 1349 (also overruling "the strict requirement of 'a showing that the [claim] limitation essentially is devoid of

anything that can be construed as structure.'"").  Here, "data accelerator" is a general construct—describing only the effect/result of compression—that invokes means-plus-function construction because the term fails to recite sufficiently definite structure for performing the claimed compression functions.  *Id*.

### 2.   "Processor" in the claims at issue fails to recite sufficient structure to avoid means-plus-function construction

There is no *per se* rule that "processor" is not a means-plus-function term.  Recently, the United States International Trade Commission ("ITC") addressed whether "processor" connotes sufficient structure to avoid § 112, ¶ 6 and ultimately concluded that for the claims considered "processor" invoked means-plus-function construction.  *In the Matter of Certain Intraoral Scanners and Related Hardware and Software*, No. 337-TA-1090, slip op. at 36–46 (Sept. 25, 2018) (attached as Ex. Y).  Initially, the ITC observed that this issue has not been addressed by the Federal Circuit.  Ex. Y at 36.  Like Realtime here, the plaintiff in the ITC matter cited a number of district court decisions that found "processor" not to invoke means-plus-function construction.  *Id*. at 36–37.  The ITC, however, found these prior decisions unpersuasive for two separate reasons.  First, the ITC explained that some district courts have concluded that "processor" is a means-plus function term.  *Id*. at 38 (citing *St. Isidore Research, LLC v. Comerica Inc.*, No. 2:15-cv-1390, 2016 WL 4988246, at *15 (E.D. Tex. Sept. 19, 2016); *GoDaddy.com, LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126, 2016 WL 212676, at *57 (D. Ariz. Jan. 19, 2016)) (attached as Exs. Z and AA, respectively).  Second, the ITC correctly assessed that "whether 'processor' evokes sufficient structure to avoid § 112(6) is a determination that must be made on a case-by-case basis."  Ex. Y at 38.

In addressing the term "processor," the ITC found "[p]articularly instructive" the three PTAB decisions cited in Defendants' Opening Brief.  Ex. Y at 38–41 (summarizing the PTAB's

*Lakkala, Erol,* and *Smith* decisions addressing "processor") (Exs. P–R, respectively).[14]  In each of these decisions, "[t]he PTAB found that the plain and ordinary meaning of 'processor' evokes only sufficient structure to perform 'functions typically found in a commercially available off-the-shelf processor.'" *Id.* at 40 (quoting PTAB decisions).  In each case, the PTAB found that "processor" invokes means-plus-function construction because the claimed functions were "not typical functions found in a general purpose processor and would require additional programming of the processor to implement."  *See, e.g.*, Ex. P at 11 (*Lakkala* decision).

Similar to the patentee in the ITC matter, Realtime fails to address the determinative issue in this case as to whether "processor" invokes means-plus-function construction:  Can the compression functions recited in claims 1 and 24 of the '728 patent be executed by a general purpose processor without specific programming?  *See* Ex. Y at 40.  Because the answer is "no," the recitation of "processor" in claims 1 and 24 invokes means-plus-function construction. *Williamson*, 792 F.3d at 1349 (explaining that the presumption is overcome and § 112, ¶ 6 applies if the claim recites "function without reciting sufficient structure for performing that function"); *see also* Y at 41  ("Because the claims recite a function that cannot be performed by a general purpose processor without specific programming, the recitation of "processor" does not provide sufficient structure to perform the claimed function.").  Rather than contest this point, Realtime cites extrinsic evidence that overwhelmingly demonstrates that a general purpose processor—such as the one recited in claims 1 and 24 of the '728 patent—cannot perform the compression functions without specific programming.   Realtime Br. at 18 (confirming that a processor "executes instructions," "interprets and executes instructions," "process[es] coded instructions").  Moreover,

---

[14]  The PTAB's decisions are also available at http://www.uspto.gov/patents-application-process/appealing-patent-decisions/decisions-and-opinions/key-decisions under the section titled "Key Decisions Involving Functional Claiming."

apart from reciting that the "processor" is *configured to* perform the compression functions, the claims recite no particular structure to perform them. *See generally* Ex. C, claims 1 and 24.  As such, the recitation of "processor" in the claims at issue in this case invoke means-plus-function construction in accordance with Section 112, ¶ 6.

### 3.   Corresponding structure for § 112, ¶ 6 computer-implemented functions is the algorithm disclosed in the specification

"In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm."  *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999); *see also Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) ("[T]he corresponding structure for a § 112 ¶ 6 claim for a computer-implemented function is the algorithm disclosed in the specification.") (citation omitted).  Defendants' proposed construction follows Federal Circuit precedent by identifying the computer-implemented algorithm that is disclosed by the patents' specification.  *See* Def. Br. at 29–30.  Moreover, Realtime's criticism that "processor" should not be construed to be a "a processor programmed…" is unfounded.  Realtime Br. at 20.  After invoking § 112, ¶ 6 for "processor" and other computer-implemented functions, courts have used this exact format to express the algorithm disclosed in the patent specification. *See, e.g.*, Ex. Z at *16 (construing the corresponding structure for "a processor configured…" as "processor programmed to…"); *see also WMS Gaming Inc.*, 184 F.3d at 1349 (affirming the district court's § 112, ¶ 6 construction that "the corresponding structure disclosed in the specification is a microprocessor programmed to . . . .").

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that their proposed constructions be adopted.

Dated: April 9, 2019                       Respectfully submitted,

                                           /s/ Janine A. Carlan
                                           Janine A. Carlan (*Pro Hac Vice*)
                                           Jasjit S. Vidwan (*Pro Hac Vice*)
                                           **ARENT FOX LLP**
                                           1717 K Street, NW
                                           Washington, DC 20036-5344
                                           Telephone: (202) 857-6000
                                           janine.carlan@arentfox.com
                                           jasjit.vidwan@arentfox.com

                                           Allen N. David, BBO #115000
                                           Elizabeth A. Houlding, BBO #645981
                                           **PEABODY & ARNOLD LLP**
                                           Federal Reserve Plaza
                                           600 Atlantic Avenue
                                           Boston, MA 02210
                                           Telephone: (617) 951-2100
                                           adavid@peabodyarnold.com
                                           ehoulding@peabodyarnold.com

                                           *Attorneys for Defendant Acronis, Inc.*

                                           /s/ Wasif H. Qureshi
                                           Irwin B. Schwartz (BBO# 548763)
                                           ischwartz@blaschwartz.com
                                           **BLA SCHWARTZ, PC**
                                           One University Ave., Suite 302B
                                           Westwood, Massachusetts 02090
                                           Phone:  781-636-5000
                                           Fax:  781-636-5090

                                           Wasif H. Qureshi
                                           wqureshi@jw.com
                                           Chris N. Cravey
                                           ccravey@jw.com
                                           **JACKSON WALKER, LLP**
                                           1401 McKinney Street, Suite 1900
                                           Houston, TX  77010
                                           Tel: (713) 752-4200

                                           *Attorneys for Defendant Carbonite, Inc.*

## CERTIFICATE OF SERVICE

I, Jasjit S. Vidwan, do hereby certify that I have, this 9th day of April, 2019, served the foregoing document on all counsel of record, by causing a copy thereof, to be sent electronically to the registered participants in this case as identified on the Notice of Electronic Filing (NEF).


*/s/ Jasjit S. Vidwan*